IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

          v.          :          CRIMINAL NO. 25-245

KAHILEELAH HOUCK          :

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Kahileelah Houck was a full-time employee of the Philadelphia Sheriff's Office between 2019 and 2022. Despite receiving a steady paycheck throughout this period, Houck fraudulently sought and obtained $44,510 in federal pandemic unemployment assistance in 2020 and 2021. Houck profited off the COVID-19 pandemic by lying on over a dozen applications, including by exaggerating her prior income, falsely stating she was unemployed due to the COIVD-19, and falsely certifying that she had no weekly income. The disaster funds Houck diverted into her own pocket represented critical emergency aid intended for those who had lost their livelihoods due to the COVID-19 pandemic. These funds were not intended for Houck, and but for her fraud, these funds would not have been distributed to Houck. For these reasons, balanced against Houck's lack of prior criminal history and other mitigating factors, the government recommends a sentence of imprisonment at the bottom of the advisory guideline range.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C.

§ 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1] In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 516 F.3d 205, 214-18 (3d Cir. 2008).

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

---

[1]  Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

## I.    BACKGROUND

On March 9, 2026, the defendant pled guilty to theft of government money, in violation of 18 U.S.C. § 641. During her plea colloquy, the defendant admitted that she unlawfully and fraudulently obtained $44,510 in federal pandemic unemployment assistance benefits to which she was not entitled. PSR ¶¶ 13-17.

## II.    SENTENCING CALCULATION

### A.    Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant is a term of imprisonment of 10 years, a term of supervised release of three years, a fine of $250,000, and a special assessment of $100.

### B.    Sentencing Guidelines Calculation.

The Probation Office correctly calculated the defendant's advisory guideline range. The base offense level for this defendant is six, pursuant to USSG § 2B1.1(a)(2). PSR ¶ 24. The offense level is increased six levels as a result of the loss amount caused by the defendant's conduct, under USSG § 2B1.1(b)(1)(D). PSR ¶ 25. The government further agrees that the defendant has demonstrated acceptance of responsibility, and that a two-level downward adjustment is applicable under USSG § 3E1.1(a); and further the government does not contest the application of the Zero-Point offender two level downward adjustment, as allowed under USSG § 4C1.1(a) and (b). PSR ¶¶ 30-31. Finally, the government agrees that the final adjusted offense level is 8, that the defendant has no criminal history and accordingly has a Criminal

History category of I. PSR ¶¶ 32, 35. The government agrees that the defendant's Guideline range is 0 to 6 months' imprisonment.

There are no unresolved objections to the PSR or advisory Guidelines range.

## III.   ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

A.     **Consideration of the 3553(a) Factors.**

Defendant Kahileelah Houck engaged in a premeditated and deliberate fraud scheme that took advantage of the pandemic unemployment assistance ("PUA") program. Six years ago, in the Spring of 2020, the world was shutting down due to the onset of the COVID-19 pandemic. At this time of public need, the government funded various programs to help those most afflicted, including the PUA program, which was designed as a lifeline for part-time gig workers who were newly unemployed due to the pandemic. The defendant was not one of those people. Rather, she was one of the lucky people who—through her full-time position with the Philadelphia Sheriff's Office—continued to receive an uninterrupted and steady salary (as well as multiple raises) throughout the pandemic; in other words, she did not experience any loss of income due to COVID-19 disaster.

Notwithstanding her full-time job, Houck feigned unemployment to take advantage of the PUA program. For 14 months, she repeatedly lied and falsified applications and certifications and took pandemic unemployment funds to which she was not entitled. The evidence is clear that Houck's fraudulent applications were not a mistake or misunderstanding. Her conduct was intentional and deliberate – she lied on 15 different applications and nearly 5 dozen certifications, including by exaggerating her prior income, stating she was unemployed due to COVID, and certifying she had no weekly income. Had Houck been truthful, she would not have been approved.

Houck's successful execution of her fraud scheme allowed her to effectively double her annual earned income. Due to her false applications, Houck made nearly three times as much

money from being "unemployed" from her part-time business "House of Hair," as she reportedly made pre-pandemic while "employed" with House of Hair. Flush with cash, Houck spent her ill-gotten pandemic proceeds on personal items including purchases at high-end luxury retailers such as Nordstrom, Saks, and Yves Saint Laurent, among others. The defendant's crime falls squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1) and (a), counsels in favor of the requested sentence.

The defendant's lack of criminal history, family support, and community involvement supports the requested sentencing range and recommendation in the guilty plea agreement, and would generally be consistent with those imposed in this district to similarly situated defendants and thus complying with Section 3553(a)(6) and avoiding undue disparity. In light of the consequences of her felony conviction in this case, she appears to be at relatively low risk of reoffending; thus, specific deterrence is not a particularly significant factor in this case. General deterrence, however, does weigh strongly in favor of the recommended guideline sentence, as a meaningful sentence will help to send the message to future fraudsters that they will be held accountable for stealing from government assistance programs that they do not qualify for. A sentence at the bottom of the guidelines range appropriately accounts for Houck's lack of prior criminality, family support, and community involvement, balanced against her criminal acts.

Finally, there is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D).

**B.** **Supervised Release.**

If this Court orders a term of imprisonment, then pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, if the court orders a term of imprisonment, a term of supervised release of 2 years is warranted. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), and pay restitution to victims, § 3553(a)(7).

**IV.** **CONCLUSION**

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, and pursuant to the plea agreement between the parties,

- 8 -

the government recommends a sentence at the bottom of the applicable advisory Sentencing Guidelines range.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Chandler Harris*
S. CHANDLER HARRIS
SAMUEL S. DALKE
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

> Tamika McKoy, Esq.
> Counsel for Kahileelah Houck

> */s Chandler Harris*
> S. CHANDLER HARRIS
> SAMUEL S. DALKE
> Assistant United States Attorneys

DATED:  June 4, 2026.